## Case No. 5,993.

### Ex parte HAMLIN.

### In re BRODT.

[2 Lowell, 571; [1] 16 N. B. R. 320; 5 Cent. Law J. 281.]

District Court, D. Massachusetts. May, 1877.

BANKRUPTCY—SETTING ASIDE COMPOSITION — NOTICE TO CREDITORS—ACTS UNDER COMPOSITION VALID—DUTIES OF CREDITORS.

1. When an application is made to set aside a composition once recorded, and to proceed in bankruptcy, notice should be given to all the creditors as well as to the debtor.

[Cited in Re Shaw, 9 Fed. 498; Re Dunn, 53 Fed. 343.]

[Cited in Farwell v. Raddin, 129 Mass. 8.]

2. When a composition, partly carried out is set aside, all acts which have been regularly done in pursuance of the resolutions are valid, and the assignment to an assignee in bankruptcy should contain a proviso to that effect.

[Cited in Re Wilson, Case No. 17,781.]

3. Creditors receiving their respective shares of a composition are not bound to see that other creditors receive their shares.

4. It seems, that a creditor, who knows that a composition is being carried out, and that the creditors are being paid, and makes no effort to obtain his own share, will be estopped to object to these payments.

In February, 1876, a petition in bankruptcy was filed against H. D. Brodt, as surviving partner of the firm of R. W. Dresser & Co.; and he at once offered a composition, which was finally accepted, and ordered to be recorded in April, 1876. It provided for payment of twenty per cent, by instalments, secured by notes, the last payment to be at the end of six months from the date of recording the resolutions. In February, 1877, one Hamlin filed a petition in the cause, alleging himself to be a creditor of Brodt, and that he and some others had not been paid the composition, by reason of disputes concerning the amount of their respective debts, and that Brodt was apparently no longer able to pay the composition; but that the petitioner had reason to believe there were assets which might be reached by an assignee, and praying that the composition might be set aside, and for an adjudication of bankruptcy. After notice to the debtor the petition was granted and a warrant was issued. At the first meeting of creditors a question arose, and was certified to the court, of the right of a creditor who had received his twenty per

[1] [Reported by Hon. Henry B. Brown. District Judge, and here reprinted by permission.]

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

cent, and had released the debtor, to prove his debt. Certain creditors then filed a motion to vacate the adjudication, or to modify it in such a way that the assignee should not disturb the payments which they had received under the composition. The evidence tended to show that Brodt had given notes for the instalments of his composition to all the creditors whose debts were undisputed, or with whom he could adjust the amount due, leaving Hamlin, and perhaps two others, out of the account. There was no charge of fraud. Brodt's position was a difficult one, because his partner had attended exclusively to the financial affairs of the firm, and had died suddenly, leaving the business in much confusion. After the composition was recorded, the petitioner Hamlin entered into a partnership with Brodt, and had lent him money, and they had disposed of the old stock of R. W. Dresser & Co., and of such new goods as they bought; but the business was not profitable, and the new firm was dissolved. Brodt, in the mean time, paid all the composition notes as they came due, with the knowledge of Hamlin.

A. E. Pillsbury, for petitioner Hamlin.
B. F. Brooks, J. W. May, E. Avery, and H. J. Boardman, for creditors.

LOWELL, District Judge. The statute of 1874, c. 390, § 17 (18 Stat. 184) provides, that if at any time it shall appear to the court, on notice, satisfactory evidence, and hearing, that a composition cannot proceed without injustice or undue delay to the creditors or the debtor, the court may refuse to accept it, or may set it aside, and that the debtor shall then be proceeded with as a bankrupt. Upon examination, I think the point is well taken that "notice" means notice to the creditors as well as the debtor. If the debtor should make the application, as he clearly may, there would be no doubt; but the court cannot know that a creditor is not acting in concert with the debtor, to obtain a reversal of the composition. The notice is undoubtedly intended to be given to the parties interested; and in almost all cases the creditors must be such parties. I was misled by the analogy of petitions for adjudication, and by the fact that the action in cases of this kind heretofore has been upon motions which showed on their face that all the creditors stood on an equal footing. But it is plain that a creditor hostile to the composition, if he could procure the acquiescence of the debtor, might do great mischief in this way. Without committing myself to the position that such notice is absolutely essential in all cases, I hold that it was in this case.

Several creditors having now been heard upon the merits of the question, it is not necessary to vacate the adjudication for a defect of notice, if a new decree of the same sort would follow. I therefore proceed to the other points taken by the creditors, that the remedy of setting aside the composition and going forward in bankruptcy is not appropriate to the case; that the petitioner, having stood by when the composition was entered into, and when the notes were paid, is estopped; that, at any rate, the decree of adjudication should be so modified that it cannot interfere with what has been done under the composition.

If the danger which the creditors fear, that the title of an assignee appointed at this time will relate back to February, 1876, so that the acts of the bankrupt since that day would all be voidable, were well founded, there would be very strong ground for holding this petitioner and all others having actual or constructive notice of the composition estopped to interfere with it. There was a time when it was thought that annulling proceedings in bankruptcy would render voidable everything done by an assignee; but this fear was quieted by the able judgment in Smallcombe v. Olivier, 13 Mees. & W. 77; and there was a similar case in this country,—Penniman v. Freeman, 3 Gray, 245. It is the law now that to annul or supersede proceedings of this character, means to stay their further prosecution.

So with compositions: the statute authorizes them, the court orders them; and payments made in conformity to a recorded resolution are not preferences. If the creditors are willing to trust a debtor to pay his composition, and exact no mortgage or transfer from him, they authorize him to raise the means for paying it, by dealing with his property. Ex parte Burrell, 1 Ch. Div. 537; Re Reiman [Case No. 11,673]; Re Van Auken [Id. 16,828]. And it cannot be held that the creditors are bound to see each other paid.

There is a hardship, undoubtedly, for those creditors whom the debtor omits from his list, or neglects to pay. In most cases, all difficulties would be met by the appointment of an assignee or trustee, to see that the composition is paid, and that all creditors are treated alike. I have not known the objection taken by a creditor in any case, that too much power was left with the debtor. I have not been willing to interpose mero motu, because, looking at the statute and its history, I am not satisfied that it intends to insist that there shall always be such security, or any security, if creditors choose to dispense with it. Nevertheless, under our statute, which throws a decision upon the court, I think it might be a sound exercise of discretion in almost all cases to require security, if any creditor asked for it.

I am of opinion that the remedy of bankruptcy is intended to reach any case in which it is likely to work a beneficial result for one or more creditors, or for the debtor. The two or three creditors whose dividends have not been paid have other remedies. They may apply to this court in a summary way to require the debtor to pay them, or they may bring actions at law; but I think they may

likewise go on in bankruptcy, if there is no objection raised. In this case, the debtor consents, and the general creditors have no objection, provided the decree shall be so modified as to express those points concerning the assignee's title, which I have already said would be necessarily implied. To this they are entitled, because a decree should be clear, and leave nothing to implication.

The ordinary form of assignment would make the assignee's title relate back to Feb. 6, 1876; and that is the day to which his title will relate; but in the assignment, after the mention of that date, there must be added: "Without prejudice to lawful acts done or titles acquired under and by virtue of the resolutions for composition heretofore recorded in this cause." Let a certificate be sent to the register that the creditors who have taken the composition have no right to vote for an assignee, and that the assignment should be in a qualified form, substantially as above indicated.