McCLINTIC–MARSHALL COMPANY *vs.* CITY OF NEW BEDFORD & others.

Suffolk.    March 10, 1921. — June 10, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, & CARROLL, JJ.

*Contract,* Performance and breach. *Equity Jurisdiction,* To enforce bond of contractor upon public work. *Bankruptcy,* Composition. *Surety. Waiver. Interest.*

On a November 30, the committee on city property of New Bedford, whose chairman, with the mayor of the city, on behalf of the city had executed a contract with a corporation for the construction of a school building, voted to accept the building "with the exception enumerated in the Superintendent of Buildings' report," which showed that certain work of the value of $715 remained to be done. Later, and before January 13, the city occupied the building and by January 13 the work had been fully completed, with the consent of the city and of the surety on a bond given to the city by the main contractor under St. 1909,

c. 514, § 23, by a receiver of the property of the main contractor who had been appointed in bankruptcy proceedings. A master, to whom was referred a suit in equity by a subcontractor for satisfaction of his claim under the main contractor's bond, found that the work under the contract was completed on January 13, and allowed claims filed by intervening petitioners within sixty days thereafter and more than sixty days after November 30. *Held*, that the finding of the master was warranted, the acceptance of the work on November 30 having been with reservations.

A sworn statement of labor performed and furnished and materials used by a subcontractor in the construction of a school building under a contract between a city and a main contractor, which had been executed on the city's behalf by its mayor and the chairman of its committee on city property, was filed with the proper officers of the city in season to entitle the subcontractor to the benefits of a bond given under St. 1909, c. 514, § 23, if it was received by mail by the mayor two days after the work was completed and was before the committee on city property and its chairman and was read to them by their clerk fifty-three days later.

Where, before the completion of the work of the construction of a public building for a city, an involuntary petition in bankruptcy was filed against the main contractor who had given to the city a bond with a surety under St. 1909, c. 514, § 23, and a subcontractor, without it appearing that the city had funds available for application to the payment of his claim and before an adjudication of bankruptcy, filed his claim in the proceedings as an unsecured creditor and later received part payment of the claim in accordance with a composition ordered by the bankruptcy court after it had been assented to by a majority in number and amount of the creditors, the subcontractor was not thereby precluded from maintaining against the surety on the main contractor's bond and the city a suit in equity to compel payment of his claim by the surety and also by the city from funds which, upon the subsequent completion of the contract by a receiver of the property of the bankrupt, became available in the hands of the city and which it was holding under the provisions of the statute pending the settlement of the subcontractor's claim.

In the suit above described, interest was held properly to have been allowed on claims of subcontractors from the dates when the amounts of their respective claims became due; and in instances where it did not appear when the claims of intervening petitioners became due, it was *held* that interest should be allowed respectively from the dates of the filing of such intervening petitions and not from the date of the filing of the main bill.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 25, 1919, under St. 1909, c. 514, § 23, in behalf of the plaintiff and of all other persons who had performed or furnished labor or had furnished materials used in the construction of a primary school building in the city of New Bedford under a contract between the city, a defendant, and the Benjamin F. Smith Company, also a defendant, and who were entitled to the benefit of a bond given under the statute by the Massachusetts Bonding and Insurance Company, a defendant, to require payment of the

claims of the plaintiff and intervening petitioners by the surety on the bond and by the city from funds alleged to be available for that purpose.

A petition in bankruptcy having been filed against the main contractor and there having been appointed a receiver of its property, who with the consent of the city and of the surety company had completed the contract, the receiver also was made a party to the suit. Twelve other subcontractors were permitted to file intervening petitions.

The suit was referred to a master. His findings as to the bankruptcy proceedings were in substance as follows: An involuntary petition was filed against the Benjamin F. Smith Company on September 28, 1917. " Subsequently to the filing of said bankruptcy petition, but upon what date it does not appear in evidence, the said the Benjamin F. Smith Company offered in said bankruptcy proceedings a composition whereby each creditor would be entitled to receive fifteen per cent of his claim in cash, and two notes of fifteen per cent each, payable in six months and one year, respectively, from April 1, 1918; that a majority in number and amount of its creditors accepted the said offer and no one objected thereto; that all funds and notes necessary to carry out the terms of said composition were deposited by the Benjamin F. Smith Company as required by law; that upon the thirtieth day of March, 1918, the said District Court ordered, adjudged, and decreed that the said composition offer made by the Benjamin F. Smith Company be confirmed, and further ordered that a distribution of said consideration should be made by Nathan W. Littlefield, Esquire, referee in bankruptcy; that previously on the twentieth day of November, 1917, the said McClintic-Marshall Company duly filed in said bankruptcy proceedings a proof of unsecured claim in usual form for the sums of $1,855.06 and $9,351.44, with interest, as alleged in its bill of complaint, which said claim was duly signed by the complainant company as a creditor and sworn to by the assistant treasurer of said McClintic-Marshall Company; that in said claim the said plaintiff company made oath as follows: 'That no part of said debt has been paid, that no note has been received therefor or any part thereof and that no judgment has been recovered thereon; that there are no set-offs or counter claims to the same, and that said corpora-

tion has not nor has any person by its order or to the knowledge or belief of said deponent for its use had or received any manner of security for said debt whatever;' that said debt referred to in said proof of claim is the same debt alleged by this plaintiff in its bill of complaint in this suit. Said proof of claim was allowed in the sum of $11,260.20 (representing the total of said sums of $1,855.06 and $9,351.44, with interest from the expiration of thirty days from the dates of the respective shipments to the filing of the petition in bankruptcy on September 20, 1917) and has not been withdrawn or expunged, and there is no evidence that this plaintiff did not understand and assume all legal consequences, whatever they might be, that might ensue, and I find upon the evidence that such consequences, whatever they may be, were intentionally assumed by this plaintiff. I further find that said referee in bankruptcy tendered to said McClintic-Marshall Company the check for $1,689.03 and the two notes for $1,689.03 each, with interest from April 1, 1918, to which said plaintiff was entitled if it participated in said composition; that said McClintic-Marshall Company declined at that time to receive said check and notes and did not until after this suit had been begun, to wit, until July 31, 1920, accept or actually receive any benefit under said composition. I further find that on the last-mentioned date said McClintic-Marshall Company received said check and notes from the referee in bankruptcy and both notes (including interest from April 1, 1918) were on the same day paid by said The Benjamin F. Smith Company, the total amount so paid on account of the notes and interest being $3,850.98. The McClintic-Marshall Company has therefore received in all the sum of $5,540.01."

The master's findings as to allowances of interest were as follows: " I am making the allowances of interest herein in pursuance of my finding hereinbefore set forth with reference to the dates of completion of the several subcontracts. Where there is no evidence other than the filing as to the date when each claim became due and payable, I assume that interest should be allowed from the date of filing, where such date is prior to the filing of the bill in this case. In every instance where reference is made to 'the filing of the bill herein,' what is intended is the date of filing of the bill of McClintic-Marshall Company, which is the date of the beginning of this proceeding, viz., February 25, 1919,

and not the filing of the intervening petition of the individual creditor."

Other material findings by the master are described in the opinion.

After a hearing by *Jenney,* J., there were entered an interlocutory decree confirming the master's report and a supplemental report, and a final decree for the plaintiff and the intervening petitioners. The defendant, the Benjamin F. Smith Company, and its receiver alone appealed.

*A. T. Smith,* for the Benjamin F. Smith Company and the receiver of that company.

*H. S. Davis,* for the plaintiff.

*C. E. Haywood,* for the H. E. Fletcher Company.

*J. A. Locke,* for the New England Slate Blackboard Company.

*J. J. Mahon,* for P. L. Monroe and Son.

CARROLL, J. This is a suit in equity brought by the plaintiff, the McClintic-Marshall Company, a subcontractor, to enforce its rights under St. 1909, c. 514, § 23, and secure for itself and others who are entitled to intervene, payment for the labor performed or furnished and materials used in the construction of a school building in the city of New Bedford. The city, by its mayor and its chairman of the committee on city property, contracted with the Benjamin F. Smith Company for the erection of a school house; and on March 29, 1917, the defendant Massachusetts Bonding and Insurance Company duly executed to the city, under St. 1909, c. 514, § 23, a bond in the penal sum of $55,651 to secure payment by the Benjamin F. Smith Company for the labor and materials so furnished. On September 28, 1917, a petition in bankruptcy was filed against the Benjamin F. Smith Company. The defendant Grieve was appointed receiver. Subsequently the company offered a composition whereby each creditor was to receive fifteen per cent of his claim in cash, and two notes each for fifteen per cent, payable in six months and one year respectively from April 1, 1918. A majority in number and amount of the creditors accepted this offer and no one objected thereto. On March 30, 1918, the District Court confirmed the offer of composition. Subsequent to the commencement of this suit, the plaintiff received as its share a check for $1,689.03 and two notes each for the same amount. Both notes have been paid

and the total sum received by the plaintiff under the composition was $5,540.01.

In October, 1917, by arrangement with the city, the receiver assumed the completion of the contract for the construction of the building and thereafter the various subcontracts were performed under his direction and to his acceptance, the Massachusetts Bonding and Insurance Company assenting to the completion of the contract. The building was not finished until January 13, 1919, although on November 30, 1918, it was voted by the committee on city property to accept the building " with the exception enumerated in the Superintendent of Buildings' report." This report showed that certain work to the value of $715 remained to be done. The city occupied the building before January 13, 1919. There is now due from the city the sum of $33,436.12, which amount exceeds the sum of the claims of all the petitioners, and would be payable under the contract, were it not for this suit.

Upon the coming in of the master's report the case was heard by a single justice, who confirmed the report and by whose order a final decree was entered establishing the claims of the plaintiff and of all the intervening petitioners except that of the E. Stanley Wires Company. The case is before us on the appeal of the Benjamin F. Smith Company and of Robert Grieve, receiver of that company.

If the work was completed within the meaning of the statute on January 13, 1919, it is undisputed that the claims of the plaintiff and of all intervening petitioners whose claims are allowed, were seasonably filed. If, however, the work was completed on November 30, 1918, some of the intervenors did not file a statement of their claims within the time required. In order to obtain the benefit of the security under the statute, the claimant must file his claim within sixty days after the completion of the work. St. 1909, c. 514, § 23. Although the acceptance and occupation of a building may under some circumstances be evidence of the completion of the contract, in the case at bar the acceptance of the work on November 30 was with certain reservations; and the occupation of the building was not understood to be in full acceptance of the work. The labor and material subsequently performed and provided, as found by the master, were in performance of the

contract, with the assent and approval of all the parties, and the finding that the work was completed on January 13, 1919, was fully warranted. *Otis Elevator Co.* v. *Long,* 238 Mass. 257.

The defendants make no contention that the claims were not filed with the proper officers or agents of the city, as required by the statute, see now St. 1920, c. 210, G. L. c. 149, § 29, except with reference to the petition of P. L. Monroe and Son. In that case the master found that a sworn statement of the petitioner's claim was mailed to Charles S. Ashley, mayor of New Bedford, and received by him on January 15, 1919, and that a like sworn statement was mailed to the chairman of the committee on city property, and came before him and the committee on March 9, 1919. Although the chairman did not remember " whether he . . . actually had the paper in his hand," and the master was unable to find that the statement mailed to the chairman was in fact filed by him, the petitioner's statement bore the notation, " Received by mail by Clerk of Committees about January 1." The statement was duly mailed and was before the proper officers; and it was read by the clerk of the committee on city property at the meeting of March 9, 1919. This was sufficient to show that the claim was filed in the manner required by statute. See *Otis Elevator Co.* v. *Long,* 238 Mass. 257.

The plaintiff proved its claim against the Benjamin F. Smith Company in bankruptcy, and on the thirty-first day of July, 1920, while this petition was pending, it accepted the check and notes in payment of the composition offer and received the sum of $5,540.01, — the full amount to which it was entitled under the composition. It is the defendants' contention that proof by the plaintiff of its claim as unsecured in the bankruptcy court, and its participation in the composition proceedings and the acceptance of the amount offered in composition, are a bar to the claim asserted by it in this case.

It is well settled that the discharge of a debtor in bankruptcy proceedings does not release the surety. The creditor may prove his claim against the bankrupt and recover the balance remaining from the surety. *Wolfboro Loan & Banking Co.* v. *Rollins,* 195 Mass. 323. *Cochrane* v. *Cushing,* 124 Mass. 219. *In re Noyes Brothers,* 62 C. C. A. 218. See *Zavelo* v. *Reeves,* 227 U. S. 625. Under the bankruptcy act of 1867, 14 U. S. Sts. at Large, 517, as

amended by 18 U.S. Sts. at Large, 178, it was decided that a creditor by accepting a compromise offered by the debtor in bankruptcy, did not release the surety nor affect his liability. *Guild* v. *Butler*, 122 Mass. 498. *National Mount Wollaston Bank* v. *Porter*, 122 Mass. 308.

It does not appear that the plaintiff took part in the composition proceedings otherwise than to prove its claim in the usual form and finally to accept the composition offer. There is no evidence that it voted on the matter of composition. Under the bankruptcy act of 1898, 30 U. S. Sts. at Large, 546; 32 U. S. Sts. at Large, 797; 34 U. S. Sts. at Large, 267; 36 U. S. Sts. at Large, 838, the right of the creditor against the surety is not taken away. *Herrington* v. *Davitt*, 220 N. Y. 162. *Cohen* v. *Lachenmaier*, 147 Wis. 649. *In re Noyes Brothers, supra.* See *Guild* v. *Butler, supra*; *National Mount Wollaston Bank* v. *Porter, supra.* By the order affirming the composition the plaintiff's debt against the Benjamin F. Smith Company was discharged and the plaintiff barred from all remedies for the enforcement of its claim against the debtor or its property; but the debt was not paid nor extinguished by these proceedings. A composition under the bankruptcy act is entirely different from a voluntary composition deed. A discharge in bankruptcy is not by the agreement of the parties, but by operation of law, and is binding on the parties, not by reason of their consent, but by force of the statute. *Guild* v. *Butler, supra. National Mount Wollaston Bank* v. *Porter, supra.* And a promise, by a debtor who has been discharged in bankruptcy, or whose offer of composition has been affirmed by the court, to pay the balance of the debt remaining, is a waiver of the defence, which the law gives him against an action on the original demand or promise. *Herrington* v. *Davitt, supra. Cohen* v. *Lachenmaier, supra. Zavelo* v. *Reeves, supra.* See also *Way* v. *Sperry*, 6 Cush. 238; *Champion* v. *Buckingham*, 165 Mass. 76.

The fact that there was no adjudication of bankruptcy does not help the defendants. We know of no reason why the effect of the approval of the composition before the adjudication, so far as the right to seek compensation from the surety is concerned, should differ from an offer of composition made and affirmed after the adjudication.

Section 14 c of the bankruptcy act provides that the confirma-

tion of a composition shall discharge the bankrupt from his debts "other than those agreed to be paid by the terms of the composition and those not affected by a discharge." By this section the debtor, as in effect by a discharge in bankruptcy, is discharged from his debts; but the confirmation of the composition does not discharge him from the debts he has agreed to pay by the very terms of the agreement of composition, and when these are paid, as therein provided, the debts which have been compromised are not extinguished. They still exist, although the right to recover them is taken away.

When the plaintiff proved its claim in bankruptcy on November 20, 1917, the bond was a security for the subcontractors. The statute required the officers of the city to obtain security by bond or otherwise, for the payment by the contractor for the labor and materials used in the construction of the building, and this bond, as found by the master, was executed to secure payment by the Benjamin F. Smith Company to all persons performing labor or supplying materials in carrying out the contract for the construction of the building. The balance of $33,436.12 now due from the city, was retained for its own protection, under the clause of the contract with the Smith company giving it the right to retain from any payment then due or thereafter to become due a sufficient sum to indemnify itself against any claims or liens for which the owner might become liable and which were chargeable to the contractor. It does not appear that this sum was available as security for the plaintiff when its claim was proved in the bankruptcy proceeding. The city having complied with the statute, and furnished the bond, was not required to furnish other and additional security. The plaintiff had no enforceable right to insist on the retention of the balance due under the contract; and because the city decided for its own protection to withhold this balance, and it became additional security for the subcontractors, this did not affect the right of the plaintiff, nor make the plaintiff a secured creditor within the meaning of the bankruptcy act. In *Burr* v. *Massachusetts School for the Feeble-Minded*, 197 Mass. 357, no bond was given and payments of the fund were ordered to be made to the claimants; but in *George H. Sampson Co.* v. *Commonwealth*, 208 Mass. 372, it was held that a bond being taken under the statute, *Burr* v. *Massachusetts School for the Feeble-*

*Minded, supra,* and similar cases were not applicable. And although the fund held by the city is now available for the benefit of the subcontractors and they can rely on both the bond and the fund held by the city, the plaintiff by participating in the composition proceedings, is not deprived of its right of resorting thereto.

The primary purpose of the plaintiff was to obtain satisfaction of its debt from the surety. In alleging that there was an unpaid balance withheld by the city, circuity of action was avoided. In our opinion, although the plaintiff and the intervening petitioners have now a right to share in the unpaid balance, the bond having been given as their security, the plaintiff was not a secured creditor under the bankruptcy act and did not lose its rights to recover by proving the claim in bankruptcy and accepting the composition offer; it can now avail itself of the bond and the balance held as security for its claim.

In the decree, the plaintiff and the intervening creditors, H. E. Fletcher Company, Timothy J. Moriarty and James N. Conway, received interest on the amounts due them from the time the amounts became due under the terms of the contracts. This ruling was proper. *Friedman* v. *County of Hampden,* 204 Mass. 494, 513. *Otis Elevator Co.* v. *Long,* 238 Mass. 257. In the case of the other petitioners interest was allowed from the time of the filing of the bill of complaint. Interest should run on each of these petitions from the date of its filing, and not from the date of the filing of the bill of complaint, *Otis Elevator Co.* v. *Long, supra,* and the decree should be so modified that each of these petitioners shall receive interest on the amounts due them from the date of the filing of each intervening petition; and so modified, the decree is affirmed with costs.

*So ordered.*